IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER DIPNARINE,

    Plaintiff,

v.

                                                Civil No. 1:24-cv-01758-BAH

CHAMPION OPCO, LLC d/b/a
CHAMPTION WINDOWS AND HOME
EXTERIORS,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Christopher Dipnarine ("Dipnarine" or "Plaintiff") brought suit against Champion Opco, LLC ("Champion" or "Defendant") alleging racial discrimination in violation of Md. Code Ann. § 20-606(a)(1)(i) (Count I); retaliation in violation of Md. Code Ann. § 20-606(f)(1) (Count II); racial discrimination in violation of the Civil Rights Act, 42 U.S.C. § 2000e-2 (Count III); retaliation in violation of 42 U.S.C. § 2000e-3(a) (Count IV); and racial discrimination in violation of 42 U.S.C. § 1981 (Count V). ECF 1. Pending before the Court is Defendant's Motion to Compel Arbitration (the "Motion."). ECF 9. Plaintiff filed a response in opposition, ECF 10, and Defendant filed a reply, ECF 11. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

    **A.    Facts**

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Defendant is a home improvement company headquartered in Ohio and doing business throughout Maryland and Virginia. ECF 1, at 3. On or about October 8, 2018, Plaintiff became employed as a District Sales Manager by Champion RetailCo, LLC ("Champion RetailCo"), a wholly owned subsidiary of Defendant. ECF 1, at 3; ECF 9-1, at 1. In this role, Plaintiff was tasked with staffing and supervising the districts of Maryland and Virginia. ECF 1, at 3.

Plaintiff's complaint asserts that throughout the duration of his employment with Defendant, he experienced several instances of racial discrimination and retaliation while he was engaged in protected activity.[2] ECF 1, at 5–6. On December 6, 2018, Plaintiff signed an Executive Employment Agreement ("Employment Agreement"), which provided the terms and conditions governing Plaintiff's employment. ECF 9-3, at 2–14. Section 26 of the Employment Agreement notes an "Agreement to Arbitrate" ("Arbitration Agreement").[3] *Id.* at 11. The Arbitration Agreement provides that the parties will "arbitrate any and all claims that one Party may have against the other, including any claims [Plaintiff] may have against [Champion] . . . regarding the

---

[2] For example, Plaintiff alleges, *inter alia*, that upon being hired, he received no training while white employees in the same role received up to three weeks of dedicated training. ECF 1, at 3–4. Additionally, he alleges that he was not offered the support and staff that Defendant provided to white employees in the same role, such as a marketing manager or marketing associate. *Id.* at 4. On or about August 17, 2019, Plaintiff reached out to Defendant's Vice President of Human Resources to make a complaint regarding the allegedly discriminatory behavior by his supervisors. *Id.* Allegedly in retaliation, Defendant placed Plaintiff on a performance improvement plan and terminated him from employment on or about September 23, 2019, citing poor performance. *Id.* at 6.

[3] Section 26 states that "[t]he Company (defined in Section 8) and Executive (collectively "Parties" or "Party") agree to arbitrate any and all claims[.]" ECF 9-3, at 11. Section 8 defines the term "Company" to include "Champion RetailCo, LLC and its parent company, subsidiaries, affiliates, related entities, successors, and assigns, including Champion Holdings, LLC and Champion Opco, LLC. *Id.* at 5. Defendant asserts, and Plaintiff does not appear to contest, that Champion, as a third-party beneficiary, is "contractually entitled to assert the Arbitration Agreement as to Plaintiff and seek to compel arbitration of Plaintiff's claims." ECF 9-1, at 6. Thus, the Court finds that the Arbitration Agreement applies to claims against both Defendant (Champion Opco, LLC) and Champion RetailCo, LLC. ECF 9-1, at 2.

2

terms and conditions of his employment, the termination of his employment, and this Agreement . . . ." *Id.* The Arbitration Agreement listed different types of covered claims, including "state or local antidiscrimination/harassment/retaliation laws based on . . . race . . . or any other applicable local, state, or federal statutorily protected status[.]" *Id.*

Plaintiff asserts that he emailed the Vice President of Human Resources at Champion on October 1, 2019, requesting Defendant's signature on the Employment Agreement after Plaintiff noticed that Defendant had failed to sign the Employment Agreement. ECF 10, at 3, 12. Plaintiff also claims that he requested arbitration in that same email. *Id.* at 12. According to Plaintiff, Defendant returned the signed Employment Agreement on October 2, 2019, but did not acknowledge Plaintiff's request to arbitrate. *Id.* at 4.[4] On October 7, 2019, Plaintiff filed a charge alleging discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). ECF 1, at 2. On April 12, 2024, the EEOC issued a Notice of Right to Sue to Plaintiff. *Id.* On April 23, 2024, Defendant's counsel allegedly sent a letter to Plaintiff asserting that his claims were time barred by the 365-day time frame in the Arbitration Agreement. ECF 10, at 15. On June 18, 2024, Plaintiff filed a Complaint in this Court alleging that Defendant engaged in "unlawful employment practices" that were "based on employment discrimination on the basis of race and retaliation." ECF 1, at 1–2.

## II.     LEGAL STANDARD

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See, e.g., Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454

---

[4] As noted below, *see infra* section III(C), Defendant provides strong evidence that Plaintiff may have fabricated the portion of the email requesting arbitration. Though the Court need not reach the issue of fabrication since Plaintiff did not provide evidence to support the admissibility of the email and thus it cannot defeat the properly supported motion to compel arbitration, the allegation is nonetheless troubling. Defendant has reserved the right to seek sanctions "on account of Plaintiff's attachment of fraudulent emails as exhibits to his brief in opposition." ECF 11, at 3 n.2.

3

(D. Md. 2020) (holding that "[t]reating a motion to compel arbitration as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered") (internal citations omitted). When assessing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson*, 447 U.S. at 250; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Under Section 2 of the Federal Arbitration Act (FAA), an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While Section 2 has been interpreted as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the Supreme Court has clarified that "arbitration agreements [are] as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Section 4 of the FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4 (providing that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

4

In the Fourth Circuit, "a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). When presented with such a petition, courts "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate"). The Fourth Circuit has also explained that "[i]n view of [courts'] gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 184 (4th Cir. 2013) (citation omitted).

The Motion presents two questions for the Court: 1) whether the parties have entered into a valid agreement to arbitrate, and 2) whether the dispute in question falls within the scope of the arbitration agreement. *See Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (citing *Muriithi*, 712 F.3d at 179).

### III. ANALYSIS

Defendant has sufficiently established that the Employment Agreement, which contains an arbitration provision, is a valid contract because it satisfies the requisite elements for the formation of a contract under state law. Additionally, the incorporation of the International Institute for

5

Conflict Prevention and Resolution Rules ("CPR Rules") provides clear and unmistakable intent to delegate questions of arbitrability to the arbitrator. Thus, the remaining disputes concerning timeliness and contract repudiation should be decided by the arbitrator, not the Court.

### A.  Choice of Law

Courts examine the validity of an arbitration agreement through state contract law.[5] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "State-law principles on contract formation, rather than a choice-of-law provision, govern challenges to an arbitration agreement's existence, because application of a choice-of-law provision presupposes that the parties have formed a binding arbitration agreement[.]" *Bailey v. Mercury Fin., LLC* 694 F. Supp. 3d 613, 621 (D. Md. 2023) (internal citations omitted), *appeal filed*, No. 23–2133 (Oct. 30, 2023).

Here, Plaintiff does not dispute that he signed the Arbitration Agreement, but rather challenges the agreement's enforceability due to Champion's delayed signature and the alleged lack of mutuality. ECF 10, at 2. Thus, Plaintiff appears to challenge the validity of the contract, which typically would negate the applicability of the choice-of-law provision in the contract. However, in his brief, Plaintiff states that he "does not dispute that pursuant to the Arbitration Agreement, the contract should be interpreted according to Delaware law" and proceeds to analyze his claims under Delaware law. *Id.* at 2 n.1. Because the parties do not dispute that Delaware law controls, the Court will apply Delaware law in addressing the claims. *See Berkeley Cnty. Sch.*

---

[5] A federal court exercising diversity jurisdiction must apply the law of the forum state in which the court is located, including the forum state's choice of law rules. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *see also Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." (citing *ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983))).

6

*Dist.*, 944 F.3d at 236 (applying state law agreed upon by parties in deciding arbitration issues); *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (same).

### B. The Arbitration Agreement is a valid and enforceable contract.

Plaintiff does not dispute that he signed the Arbitration Agreement. ECF 10, at 1, 4 n.2. Rather, he claims that the arbitration agreement is unenforceable for lack of mutuality. *Id.* at 2. Specifically, Plaintiff asserts that "the mutuality and intent of Champion to be bound by the agreement to arbitrate are lacking because [] Champion did not sign the agreement until on or about October 2, 2019, after [Plaintiff] was terminated (on September 23, 2019)[.]" *Id.* (emphasis removed). The Court finds that the Arbitration Agreement bears the signature of both Plaintiff and Champion RetailCo.[6] ECF 9-3, at 14. The signature by Champion RetailCo's CEO does not have a date, thus in keeping with the Court's obligation to construe all facts and inferences in the light most favorable to the non-moving party, the Court will assume, as Plaintiff alleges, that Champion did not sign the agreement until after Plaintiff was terminated. ECF 10, at 2.

However, a delayed signature on the Employment Agreement is insufficient, without more, to negate Champion's intent to be bound by the Arbitration Agreement. As an initial matter, "there is no requirement that arbitration agreements must be signed to be enforceable." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 854 (D. Md. 2013); *see also Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 589 (M.D.N.C. 2014) ("Arbitration agreements must be in

---

[6] As established above, the Employment Agreement was signed by Champion RetailCo, but the agreement is binding on Champion Opco as well, pursuant to Sections 8 and 26 of the Employment Agreement. *See supra* n.2; *see also Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) ("It is well established . . . that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate."); *McLaughlin v. McCann*, 942 A.2d 616, 627 (Del. Ch. 2008) ("It is not unusual for courts to require arbitration of claims involving parties who were not formally parties to an arbitration agreement, a situation that especially arises when affiliates of signatories are subject to or make claims.").

7

writing, 9 U.S.C. § 2, but they need not be signed to be enforceable."). And the Fourth Circuit has held that "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision." *Washington Square Secs., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004). Thus, Plaintiff's assertion that a delayed signature negates mutuality is unpersuasive considering ample case law that demonstrates signatures are not required to enforce arbitration agreements.[7]

Further, Champion clearly intends to be bound given its current efforts to enforce the Arbitration Agreement in the instant case. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274–75 (4th Cir. 1997) (rejecting employee's argument that employer did not agree to be bound by arbitration agreement when the employer asked the employee to submit to binding arbitration). Thus, even assuming, as Plaintiff alleges, that Defendant did not sign the agreement until after Plaintiff was terminated, the lack of signature alone does not negate intent to be bound given record evidence showing mutual assent to the terms of the Arbitration Agreement.

Second, Plaintiff asserts that "the mutuality and intent of Champion to be bound by the agreement to arbitrate are lacking because . . . the agreement itself is one-sided in that it states in #27 under 'CONTINUING OBLIGATIONS' that only [Plaintiff] agrees that sections 9 through 27 [which includes the agreement to arbitrate] will continue in full force and effect after the termination of his employment." ECF 10, at 2. Under Delaware law, a valid and enforceable contract exists when: "(1) the parties intended that the instrument would bind them, demonstrated at least in part by its inclusion of all material terms; (2) those terms are sufficiently definite; and (3) the putative agreement is supported by legal consideration." *Carlson v. Hallinan*, 925 A.2d

---

[7] Plaintiff fails to cite to any authority supporting the contention that in order to be a valid agreement to arbitrate, Defendant's signature needed to be obtained earlier than it was.

8

506, 524 (Del. Ch. 2006). The "overt manifestation of assent—not subjective intent—controls the formation of a contract." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018). The Employment Agreement, which contains the Arbitration Agreement, is a valid contract under Delaware law because Plaintiff and Defendant intended for the agreement to be binding, the agreement contains definite terms, and the parties exchanged consideration.

Here, as discussed above, there was mutual assent to the terms, as evidenced by both parties' signature on the Employment Agreement and the performance of the employment relationship. Additionally, the Employment Agreement, which includes the arbitration provision, has sufficiently definite terms. "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Eagle Force Holdings*, 187 A.3d at 1232. Defendant correctly notes that the "parties are mutually forgoing the right to sue the other and further agree to arbitrate any claims arising from the employment relationship, including 'claims arising under federal, state or local anti-discrimination/harassment/retaliation laws based on . . . race.'" ECF 9-1, at 4–5 (citing ECF 9-3, at 11). Plaintiff does not contest that the terms are sufficiently definite; thus, this factor is satisfied.

Plaintiff does, however, appear to argue that the Arbitration Agreement fails for lack of consideration. *See* ECF 10, at 2 ("[T]he mutuality and intent of Champion to be bound by the agreement to arbitrate are lacking because . . . the agreement itself is one-sided in that it states in #27 under 'CONTINUING OBLIGATIONS' that only [Plaintiff] agrees that sections 9 through 27 [which includes the agreement to arbitrate] will continue in full force and effect after the termination of his employment."). Courts generally recognize that "parties' mutual assent to the Arbitration Agreement qualifies as adequate consideration." *See Smash v. Dover Downs, Inc.*, Civ

No. 21-1568, 2022 WL 2966431, at *2 (D. Del. July 27, 2022); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").

The Arbitration Agreement expressly states that both parties promise to arbitrate disputes:

> The Company (defined in Section 8) and Executive[8] (collectively "Parties" or "Party") agree to arbitrate any and all claims that one party may have against the other, including any claims Executive may have against the Company or any of the Company's employees or the Company's successors and assigns . . .

ECF 9-3, at 11. Further, the provision provides: "[t]he Parties agree such Claims will be resolved through final and binding arbitration rather than through the court system, and the Parties waive their right to trial by jury." *Id.* The plain language of the Arbitration Agreement makes clear that both parties mutually agreed to arbitrate claims, which provides sufficient consideration for contract formation. Section 27 provides: "[Plaintiff] agrees that Sections 9 through 27 will continue in full force and effect after the termination of his employment, whether voluntary or involuntary, without modification, unless otherwise prohibited by law." ECF 9-3, at 14. Nothing in Section 27 undermines the sufficient consideration that arose from the mutual agreement to be bound. Section 27 merely clarifies that Plaintiff agreed that the relevant terms agreed upon by the parties continue "in full force and effect" after Plaintiff's termination. Indeed, it appears that Section 27 applies to Champion as well, given that Champion seeks to enforce the relevant terms after Plaintiff's termination. Therefore, the Court finds that the parties entered into a valid and enforceable arbitration agreement.[9]

---

[8] The first sentence of the employment contract states: "This [agreement] is made between Champion RetailCo, LLC . . .and Chris Dipnarine ("Executive")." ECF 9-3, at 2.

[9] Defendant asserts, and Plaintiff does not contest, that "in the course and scope of his employment, Plaintiff was engaged in interstate commerce," because he "supervised district offices in Maryland and Virginia" and "worked for a company that is based in Ohio." ECF 9-1, at 5 (citations omitted).

### C. Plaintiff failed to offer proper, authenticated proof of repudiation.

Plaintiff contends that "Champion's failure to respond to [Plaintiff's] timely requests for arbitration constituted a material breach and repudiation of the agreement to arbitrate." ECF 10, at 3. Plaintiff also asserts that he "reli[ed] on the repudiation," and "filed [a complaint with] the EEOC on October 7, 2019, as a precursor to filing this lawsuit." *Id.* at 4. In support of the contention that Plaintiff requested arbitration, Plaintiff attaches email correspondence, dated October 1, 2019, indicating that Plaintiff emailed Sandy Stude, Vice President of Human Resources and Administrative Services at Champion, stating: "I need the person who witnessed me sign this to please sign the Champion LLC part and return to me. Also to confirm my request to arbitrate." ECF 10, at 10, 12. Defendant responds that "Plaintiff submitted neither an affidavit nor a declaration swearing to or verifying the authenticity of the emails he attached as exhibits to his brief in opposition" and that "[t]he true email sent on October 1, 2019, at 9:14 pm did not contain the sentence 'Also to confirm my request to arbitrate.'" ECF 11, at 2. To support Defendant's assertion, Defendant submits an affidavit by George Price, the Director of Information Technology for Champion, who affirms that "[t]he email servers of Champion and its affiliates do not contain any email from or on behalf of Plaintiff [] that includes the sentence: 'Also to confirm my request to arbitrate.'" ECF 11-1, at 2. Price also affirms that the "true and accurate copy of the email sent by Plaintiff[]" is attached as Exhibit A-1. *Id.* Thus, according to Defendant, "the only summary judgment-appropriate evidence demonstrates that Plaintiff never communicated any demand for arbitration of his claims." ECF 11, at 3.

Under the amended Fed. R. Civ. P. 56, "facts in support of or opposition to a motion for summary judgment need not be in admissible form; the [new] requirement is that the party identify

---

Under the FAA, arbitration agreements must be enforced where they are contained in a "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2.

11

facts that could be put in admissible form." *Wake v. Nat'l R.R. Passenger, Corp.*, Civ. No. 12-1510, 2013 WL 5423978, at *1 (D. Md. Sept. 26, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, Civ. No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013) ("Importantly, 'the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.'") (citation omitted)). "Rather than a bright-line rule, the amended Rule 56 now prescribes a multi-step process wherein, if the opposing party objects on admissibility grounds, 'the burden is on the proponent [] to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Lambert v. Savaseniorcare Admin. Servs., LLC*, Civ. No. DLB-20-2768, 2022 WL 3027993, at *8 (D. Md. July 29, 2022) (citations omitted). Here, Defendant clearly objected to the admissibility of the email, and Plaintiff failed to put forth any evidence of the admissibility of the disputed exhibit.[10] This is particularly problematic here, where Defendant contests authenticity and has submitted its own authenticated email, which does not contain the key line: "Also to confirm my request to arbitrate." ECF 11-2, at 2. Thus, Plaintiff has failed to satisfy his burden under Fed. R. Civ. P. 56, and the Court will not consider Exhibits 1 and 1-A, which are attached to Plaintiff's response in opposition to the Motion.[11]

---

[10] The Court notes that Plaintiff submitted the exhibit in the response in opposition to the Motion, and Defendant raised the objection to its admissibility in the reply brief. Plaintiff did not file a motion for leave to file a sur-reply to dispute Defendant's allegations or otherwise provide evidence of admissibility.

[11] Plaintiff relies on *DaimlerChrysler Corp. v. Matthews*, but that case is inapposite. 848 A.2d 577, 582 (Del. Ch. 2004). There, it was undisputed that Matthews had attempted to resolve his dispute through arbitration prior to filing suit. *Id.* at 581. Additionally, the court relied on its finding that DaimlerChrysler "failed to provide [] documents to Matthews or otherwise provide him with guidance on how he could exercise his rights under the Claim Form when it rejected his attempt to utilize the Customer Arbitration Process." *Id.* at 582. Here, as discussed above, Plaintiff has produced no competent evidence that he previously attempted to resolve his dispute through arbitration or that Defendant failed to provide him with guidance after he made such a request.

Additionally, the Court finds that even if Plaintiff had properly authenticated the exhibits, the question of repudiation, and the alleged resulting reliance on repudiation, is reserved for the arbitrator, not the court. The court's inquiry is limited to disputes concerning the question of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "'Questions of arbitrability' do not include every dispositive gateway question, but instead apply only in those 'narrow circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter' rather than the arbitrator." *M/A-COM, Inc. v. Seoul Commtech Co., Ltd.*, No. 07-cv-00012, 2008 WL 345835, *4 (W.D. Va. Feb. 6, 2008) (quoting *Howsam*, 537 U.S. at 83). Accordingly, proper "'questions of arbitrability' for the Court to consider include, among other things, whether the parties are bound by a particular arbitration clause, whether the arbitration clause applies to a particular controversy, and whether the parties submitted a dispute to arbitration." *Id.* (quoting *Howsam*, 537 U.S. at 84). "Procedural issues that arise out of the dispute and bear on its final disposition are for the arbitrator to decide, [] not this Court." *Id.*; *see also Howsam*, 537 U.S. at 85 ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (citations omitted).

Plaintiff argues that he "received no response to his clear written requests to arbitrate after he twice requested arbitration in October 2019," and moreover, he "relied on Champion's reputation and began the process of filing in the EEOC[.]" ECF 10, at 5. In *M/A-Com, Inc. v. Seoul Commtech Company*, the court considered whether the arbitrator should decide issues of contract repudiation. 2008 WL 345835, at *4. There, the plaintiff argued that defendant had repudiated the agreement, thereby waiving the right to arbitration, and the plaintiff acted in reliance

on the repudiation. *Id.* Relying on *Howsam v. Dean Witter Reynolds* and the resulting presumption that "the arbitrator should decide allegations of waiver, delay, . . . time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate," the court held that "questions of whether [defendant] repudiated or waived its right to arbitration . . . are matters for the arbitrator to decide." *Id.* (citing *Howsam*, 537 U.S. at 84–85); *see also Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003) ("We are persuaded that, on balance, the issue of repudiation most closely resembles the defenses to arbitrability such as waiver, estoppel, or delay that the Supreme Court listed as questions properly decided by arbitrators."). The same must be true here. As such, whether Champion repudiated its right to arbitration is a matter for the arbitrator to decide.

Plaintiff also maintains that the demand for arbitration is untimely. *See* ECF 10, at 5 (explaining that "the Agreement to Arbitrate compels arbitration within one year" and defendant previously "relied on the expiration of the provision providing for arbitration" to avoid arbitration). As discussed above, issues of timeliness, laches, and estoppel are squarely within the arbitrator's jurisdiction. In fact, the Fourth Circuit recently reiterated that "[d]isputes about whether the arbitration agreement terminated before the claim arose, or whether an expired agreement nevertheless covers a claim, are questions of contract duration and scope, not formation." *Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd., et al.*, ---F. 4th ----, No. 24-1328, 2025 WL 727837, at *5 (4th Cir. Mar. 7, 2025). Additionally, the Arbitration Agreement expressly contemplates that timeliness of the demand will be decided by the arbitrator. *See* ECF 9-3, at 13 (stating that "[a]ll pre-hearing disputes (including, without limitation, whether the arbitration demand was timely filed) shall be presented to the Arbitrator . . . ."). As such, issues of timeliness, laches, and estoppel are left to the arbitrator to decide.

14

### D. There is clear and unmistakable intent to delegate issues of arbitrability to the arbitrator.

After determining that an arbitration agreement is a valid contract, courts generally determine whether the dispute between the parties falls within the scope of the agreement. *See Simply Wireless, Inc. v. T-Mobile U.S., Inc.*, 877 F.3d 522 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) (holding that arbitrability disputes that arise between parties are for the courts to resolve). However, if a court determines that there is "clear and unmistakable evidence" that the parties agreed to delegate questions of arbitrability to the arbitrator, the court must allow the arbitrator to determine questions of arbitrability. *See Kaplan*, 514 U.S. at 944 (citing *AT&T Techs., Inc. v. Comm'n Workers*, 475 U.S. 643, 649, (1986)); *Malamatis v. ATI Holdings, LLC*, Civ. No. ELH-21-2226, 2022 WL 1591406, at *23 (D. Md. May 19, 2022). To satisfy the clear and unmistakable evidence standard, there must be more than just the "presence of an expansive arbitration clause." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012).

Courts have generally held that the express incorporation of arbitration forum rules constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. *See, e.g., Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (holding that incorporation of JAMS Rules constitutes "clear and unmistakable evidence" of the parties' intent to delegate questions of arbitrability to the arbitrator); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (same, as applied to the AAA Rules); *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015) (same, as applied to the UNCITRAL Rules). The Fourth Circuit has similarly held that parties' express incorporation of JAMS Rules and other substantively similar arbitration forum rules satisfies the clear and unmistakable evidence standard. *See Simply Wireless*, 877 F.3d at 522. Additionally, the Fifth Circuit has held

that the express incorporation of a set of arbitration rules, there the American Arbitration Association under its Construction Industry Arbitration Rules ("AAA Rules"), which delegated the decision of arbitrability to the arbitrator, constitutes clear and unmistakable evidence that the parties agreed to arbitrate any question of arbitrability. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674 (5th Cir. 2012); *see also Little Red Rooster Ice Cream Company v. G.S. Gelato & Desserts, Inc.*, No. 22-cv-121, 2022 WL 18585893 (W.D. Tex. July 18, 2022) (holding that parties' inclusion of the International Institute for Conflict Prevention and Resolution Rules ("CPR Rules") in their arbitration agreement demonstrated clear and unmistakable intent to arbitrate arbitrability). A similar outcome is called for here.

The CPR Rules govern the Arbitration Agreement. ECF 9-3, at 12. Relying on the Fourth Circuit's ruling in *Simply Wireless*, the United States District Court for the District of South Carolina held that CPR Rules meet the clear and unmistakable standard because they are substantively similar to the JAMS Rules. *See S&ME, Inc. v. STV Inc.*, No. 19-cv-03567, 2020 WL 4700643, at *9–10 (D.S.C. July 22, 2020) (compelling arbitration because incorporation of CPR Rules into parties' arbitration agreement constituted clear and unmistakable intent to delegate issues of arbitrability to an arbitrator). Consistent with this interpretation of Fourth Circuit precedent, incorporation of the CPR Rules in the instant Arbitration Agreement provides the same clear and unmistakable evidence of intent to arbitrate arbitrability. The CPR Rules provide: "[t]he arbitrator, and not a court, shall have the power to hear and determine challenges to the arbitrator's jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement."[12] Indeed, Plaintiff appears to not dispute that the agreement delegates

---

[12] The Court takes judicial notice of the CPR Rules. *See Whitt v. Prosper Funding LLC*, No. 15-cv-136, 2015 WL 4254062, at *8 n.2 (S.D.N.Y. July 14, 2015) (taking judicial notice of arbitration forum rules referenced in arbitration agreement).

issues of arbitrability to the arbitrator.[13] ECF 10, at 5–6. Therefore, questions regarding the scope of the Arbitration Agreement should not be determined by this Court, but by the arbitrator.

### E. The Court will stay the matter pending arbitration.

Defendant requests that the Court stay proceedings in the lawsuit pending arbitration. ECF 9-1, at 8. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (finding that staying, rather than dismissing, a suit comports with "the supervisory role that the FAA envisions for the courts"). Accordingly, the Court stays the case pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**. A separate implementing Order will issue.

Dated: March 24, 2025

/s/
Brendan A. Hurson
United States District Judge

---

[13] The Court notes that Plaintiff also does not argue that the claims at issue fall outside the scope of the Arbitration Agreement. *See* ECF 10, at 2–5 (contesting lack of mutuality and intent to be bound and asserting repudiation and untimely demand, but no arguments about scope).